IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARTHA DUBAN AND THOMAS DUBAN,<br><br>         Plaintiffs,<br><br>vs.<br><br>WAVERLY SALES CO.,<br><br>         Defendant. | No. C11-2022<br><br>RULING ON MOTION FOR SUMMARY JUDGMENT |

**TABLE OF CONTENTS**

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.   PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.  RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . 3

*V.    DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *A.    The Arguments of the Parties* . . . . . . . . . . . . . . . . . . . . . . 4
      *B.    Iowa Code Section 673.2(4)* . . . . . . . . . . . . . . . . . . . . . . . 5

*VI.   SUMMARY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*VII.  ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*I. INTRODUCTION*

This matter comes before the Court on the Motion for Summary Judgment (docket number 23) filed by Defendant Waverly Sales Co. on February 27, 2012; and the Resistance (docket number 26) filed by Plaintiffs Martha Duban and Thomas Duban on

March 19, 2012. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On May 24, 2011, Plaintiffs Martha Duban and Thomas Duban filed a Complaint and Jury Demand against Defendants Waverly Sales Co. and Dale Chupp.[1] The complaint was in two counts and alleged negligence (Count I) and loss of companionship (Count II). On June 13, 2011, Defendant Waverly Sales Co. filed a Motion to Dismiss, asserting statutory immunity under Iowa Code Chapter 673. On June 20, 2011, Plaintiffs filed an Amended Complaint and Jury Demand, setting forth additional facts. The amended complaint remained in two counts, asserting negligence (Count I) and loss of companionship (Count II). On July 22, 2011, the Court denied Defendant's motion to dismiss as moot. *See* docket number 14. On July 28, 2011, Defendant filed an Answer, generally denying the material allegations contained in the amended complaint, and asserting certain affirmative defenses. On February 27, 2012, Defendant timely filed the instant motion for summary judgment. Trial is scheduled before the undersigned on March 25, 2013.[2]

## III. RELEVANT FACTS

On March 25, 2010, Defendant sponsored a horse sale at the Waverly Sale Barn, a premises owned by Defendant, and located in Waverly, Iowa. Plaintiff Martha Duban ("Martha") attended the horse sale with her husband, Plaintiff Thomas Duban ("Thomas"). Thomas attended the sale for the purpose of purchasing or selling horses,

---

[1] On March 2, 2012, Plaintiffs filed a Stipulation of Dismissal in which they dismissed without prejudice "any and all" claims against Defendant Dale Chupp. *See* docket number 25.

[2] With the consent of the parties, this case was referred to the undersigned Magistrate Judge for all further proceedings, pursuant to 28 U.S.C. § 636(c). *See* Order of Reference (docket number 18) at 2.

2

tack, or equipment. Martha was an observer attending the horse sale with her husband.[3] She had no intention of purchasing anything at the sale, and did not have a bid card.[4] The Dubans purchased seats at the north end of the arena, in the second row, and to the left of the auctioneer. Both Martha and Thomas had attended sales at the Waverly Sale barn in the past.

At some point during the sale, Martha needed to use the restroom. The restrooms are located at the south end of the sale barn. In order to get to the restrooms from her seat at the north end of the arena, Martha had to walk through an egress in the northeast corner of the arena, exit the arena, and walk to the south end of the sale barn where the restrooms were located. When she was returning to her seat, two large Percheron draft horses were being led from the arena through the northeast egress to stalls outside the arena. While she was in the northeast egress area, the two horses shied, knocked Martha to the ground, and stepped on her, causing serious injuries. Additional facts which are relevant to the issues will be set forth below.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing

---

[3] *See* Defendant's Appendix (docket number 23-3) at 8 (In an answer to interrogatories, Martha stated that her "purpose of attending was to accompany my husband.").

[4] *See* Plaintiff's Appendix (docket number 26-1) at 3; ¶ 2 (Affidavit of Martha Duban and Thomas Duban).

3

law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

### A. The Arguments of the Parties

Defendant argues that it is immune from liability pursuant to Iowa Code Chapter 673. Specifically, Defendant argues that:

> The Iowa Domesticated Animals Act, Iowa Code Chapter 673 was intended to immunize people who hold domesticated animal events, like horse sales, from liability to attendees who choose to place themselves in proximity of these animals, from injuries that arise as a result of the dangers inherent in dealing with these animals. The statute immunizes the defendant Sales Company from any and all liability for both plaintiff's [*sic*] damages. There are no material issues of fact in dispute and this defendant is entitled to dismissal as a matter of law.

Defendant's Brief in Support of Motion for Summary Judgment (docket number 23-1) at 15.

In response, Plaintiffs argue that an exception to the immunity provided in Iowa Code Chapter 673 is applicable in this matter, and Defendant is not afforded the protection provided in the statute. Specifically, Plaintiffs argue that while she was attending the auction, Martha was simply a "spectator" or a non-participant in a "domesticated animal activity," and was injured in an area where spectators were "designated or intended" to be present. As such, Plaintiffs maintain that the exception found in Iowa Code section 673.2(4) is applicable, and negates any statutory immunity for Defendant.[5]

### B. Iowa Code Section 673.2(4)

Turning to the relevant statutory provisions, Iowa Code section 673.2(4) provides in pertinent part:

> A person, including a domesticated animal professional, domesticated animal activity sponsor, the owner of the domesticated animal, or a person exhibiting the domesticated animal, is not liable for the damages, injury, or death suffered by a participant or spectator resulting from the inherent risks of a domesticated animal activity. This section shall not apply to the extent that the claim for damages, injury, or death is caused by any of the following:
>
> . . .
>
> 4. A domesticated animal activity which occurs in a place designated or intended by an animal activity sponsor as a place for persons who are not participants to be present.

Iowa Code section 673.2(4).

---

[5] In its brief, Defendant addresses two other types of exceptions found in Iowa Code section 673.2, including an exception for recklessness and an exception for latent dangerous conditions. Plaintiffs, however, indicate in their brief that "Counsel wishes to be clear that Plaintiff's [sic] are not relying upon the latent defect or the recklessness exclusions from immunity as indicated in Defendant's Motion. Plaintiff's [sic] are only relying upon the § 673.2(4) exception to immunity in resistance herein." Plaintiffs' Brief in Support of Resistance to Motion for Summary Judgment (docket number 26) at 7. Accordingly, the Court will only address the issue of an exception to immunity under Iowa Code section 673.2(4).

Before addressing the merits of Plaintiffs' arguments concerning Code section 673.2(4), the Court will first define the pertinent terms in that code section. Horses are included in the definition of "domesticated animal." Iowa Code section 673.1(2). A "domestic animal activity sponsor" is defined as follows:

> a person who owns, organizes, manages, or provides facilities for a domesticated animal activity, including but not limited to, any of the following:
>
> . . .
>
> d.   Owners, operators, instructors, and promoters of a domesticated animal event or domesticated animal facility, including, but not limited to, stables, boarding facilities, clubhouses, rides, fairs, and arenas.

Iowa Code section 673.1(4). The Code defines a "domesticated animal event" as:

> an event which a domesticated animal activity occurs, including, but not limited to, any of the following:
>
> . . .
>
> c.   An exposition.
> d.   A show.

Section 673.1(5). Lastly, Iowa Code section 673.1(3)(g) defines "domesticated animal activity" to include "[i]nspecting or assisting an inspection of a domesticated animal for the purpose of purchase." *Id.* Here, it is undisputed that Defendant is a "domesticated animal sponsor" and the horse sale on March 25, 2010 was a "domesticated animal event."

The parties disagree, however, whether Martha was a "spectator" or a "participant" as defined by Chapter 673. Defendant asserts that Martha was a participant in the horse sale, and Plaintiffs assert that she was a spectator at the event. The statute defines a "participant" as "a person who engages in a domesticated animal activity, regardless of whether the person receives compensation." Iowa Code section 673.1(8). "Spectator" is defined as "a person who is in the vicinity of a domesticated animal activity, but who is not a participant." Iowa Code section 673.1(9).

Defendant contends that Martha was a "participant" because:

> [A] domesticated animal activity is defined under the statute to include 'inspecting or assisting in inspecting' a domesticated animal for purchase and the 'showing or displaying of a domesticated animal.' Ms. Duban was clearly watching as the horses were shown or displayed, thus participating. She was clearly there, to assist her husband in the inspecting of horses, or items for purchase, whether she planned to give advice or simply keep him company at the sale.

Defendant's Brief (docket number 23-1) at 8. Contrary to Defendant's contention, Plaintiffs argue that Martha was a "spectator" because she simply attended the horse sale with her husband as an observer and to keep him company. Specifically, Plaintiffs point out that Martha did not: (1) register for or obtain a bid card for the sale; (2) bid on any items during the sale; or (3) assist her husband in his participation of the sale.[6] Furthermore, in an affidavit, Martha stated that she "did not have a bid card on the date of her injury or on any of the dates of the auction in question. Martha Duban did not, had never and never planned to do any bidding on anything for sale at the auction in question herein."[7]

Viewing the record in the light most favorable to Plaintiffs, the Court is unpersuaded by Defendant's contention that Martha was a participant because she was "watching as the horses were shown or displayed" with her husband, and assisted her husband "in the inspecting of horses, or items for purchase, whether she planned to give advice or simply keep him company at the sale." Defendants present no evidence that Martha assisted her husband in inspecting horses or other items for purchase. Furthermore, Martha neither obtained a bid card for the horse sale, nor bid on any horses or items at the sale. Moreover, Martha stated in her affidavit, she "[i]n no way . . .

---

[6] *See* Amended Complaint and Jury Demand (docket number 9) at 2; ¶¶ 9-13; *see also* Plaintiffs' Appendix (docket number 26-1) at 3; ¶¶ 2-4 (Affidavit of Martha Duban and Thomas Duban).

[7] Plaintiffs' Appendix (docket number 26-1) at 3; ¶ 2 (Affidavit of Martha Duban and Thomas Duban).

participate[d] in the auction nor did she assist her husband in bidding or in any other way at the auction."[8] Accordingly, for purposes of summary judgment, the Court views Martha's mere observation of a horse sale with her husband as the actions of someone who is not a "participant" in a horse sale. Thus, the Court determines that there is a genuine dispute of material fact regarding whether Martha was a "spectator" or "participant" at the horse sale on March 25, 2010, precluding summary judgment. Therefore, in analyzing the issue of statutory immunity under Code Chapter 673, and viewing the record in the light most favorable to Plaintiffs, as required on a motion for summary judgment, the Court will consider Martha to be a non-participant in the sale, and as such a "spectator." *See* Iowa Code section 673.1(9) (defining "spectator" as "a person who is in the vicinity of a domesticated animal activity, but who is not a participant.").

Turning to the exceptions to immunity provided in Code section 673.2, Defendant argues that defining auction attendees as spectators:

> creates a contradiction under the statute in that under subsection (5) as [*sic*] spectators liability is determined by whether a reasonable person would know a domesticated animal activity would take place in that area where they chose to be. Under subsection (4) liability to spectators is determined by whether the activity is taking place in an area where spectators are intended to be present.

Defendant's Brief (docket number 23-1) at 11. The Court finds no contradiction between Code sections 673.2(4) and 673.2(5). Code section 673.2(4) applies to situations where a spectator is injured (1) in a place where a "domesticated animal activity" occurs; and (2) that place is an area which is "designated or intended" for spectators to be present. Code section 673.2(5), on the other hand, applies to situations where a spectator is (1) at a "domesticated animal event"; (2) is aware of the risks of "domesticated animal activities"; and (3) is injured in a place where the spectator would not expect such domesticated animal activities to occur at such an event. *See Hynes v. Clay County Fair*

---

[8] *Id.*; ¶ 3.

*Association*, 672 N.W.2d 764, 768 (Iowa 2003) (considering Code section 673.2(5) and finding that a woman injured by a runaway horse would not expect to encounter a horse on a pedestrian walkway at a county fairgrounds).

Here, it is evident that Code section 673.2(4) is the applicable statutory provision. When she was injured, Martha was returning from the restroom, to her seat in the arena. In order to get back to her seat in the arena, she had to walk outside the sale barn from the south end of the building, and enter back into the building through an egress in the northeast corner of the sale barn. The northeast egress is used by people attending the horse sale to get to the building exit, used as a gathering space for attendees of the sale, and used to lead horses from the arena to stalls outside the arena. While Martha was in the northeast egress area, two horses shied, knocked her to the ground, and stepped on her, causing her injuries. In her affidavit, Martha described the egress as follows:

> Both the northeast exit and the northwest ingress areas are literally filled with auction goers, standing, milling about and sitting on fence boards. People are practically hanging from the rafters as every seat in the facility is sold before the sale begins and this is an area designated and known for people to stand or mill about who could not purchase a seat or who are entering and exiting the facility along with the horses. People who cannot buy seats are allowed to stand around the egress and ingress areas between the arena sales floor and the stall areas. It is not only difficult for an elderly woman to traverse this area because of the crowd of people, but it is impossible to assess, in advance, when horses will be coming through these narrow areas. My husband thought, and so did I, that the northeast egress would be the easiest for me to get in and out given the press of people on either side. I had to use the restroom and the path I took seemed the most reasonable and direct.

Plaintiffs' Appendix (docket number 26-1) at 4; ¶ 6 (Affidavit of Martha Duban and Thomas Duban). Defendant acknowledges that the area where Martha was injured is a "passageway between the arena ring and the stalls where the horses are kept. It is an area

where horses are led regularly."[9] Furthermore, nowhere in the summary judgment record does Defendant dispute Plaintiffs' description of the northeast egress or northwest ingress, or assert that attendees of the horse sale were not allowed in those areas. Therefore, viewing the record in the light most favorable to Plaintiffs, the Court determines that a genuine dispute of material fact exists regarding whether Martha was a spectator or non-participant who was injured in "a place designated or intended by an animal activity sponsor as a place for persons who are not participants to be present," thereby making an exception to the statutory immunity provided in Code Chapter 673 applicable in the present matter. *See* Iowa Code section 673.2(4). Accordingly, the Court concludes that because a genuine dispute of material fact exists with regard to the applicability of Code section 673.2(4), an exception to immunity found in Code section 673.2, the Defendant is not entitled to summary judgment. Therefore, Defendant's motion for summary judgment is denied.

## VI. SUMMARY

Viewing the evidence in the light most favorable to Plaintiffs, the Court determines that Defendant is not entitled to summary judgment. Specifically, the Court finds two genuine disputes of material fact are at issue in this matter: (1) whether Martha was a "spectator" or "participant" in the horse sale on March 25, 2010, as defined in Code Chapter 673; and (2) whether Martha was injured in "a place designated or intended by an animal activity sponsor as a place for persons who are not participants to be present," thereby meeting the exception to immunity provided in Iowa Code section 673.2(4). Therefore, the Court concludes that summary judgment is precluded, and Defendant's motion for summary judgment is denied.

---

[9] Defendant's Statement of Material Facts (docket number 23-2) at 3; ¶ 10.

## VII. ORDER

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (docket number 23) filed by Waverly Sales Co. is hereby **DENIED**.

DATED this 12th day of April, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA