IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARTHA DUBAN AND THOMAS DUBAN,<br><br>Plaintiffs,<br><br>vs.<br><br>WAVERLY SALES CO.,<br><br>Defendant.<br><br>-----<br><br>WAVERLY SALES CO.,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>MERLE OXLEY and OXLEY'S, INC.,<br><br>Third-Party Defendant. | No. C11-2022<br><br>RULING ON RENEWED MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Renewed Motion for Summary Judgment (docket number 57) filed by Defendant Waverly Sales Co. on February 22, 2013, and joined in by Third-Party Defendants Merle Oxley and Oxley's, Inc. Plaintiffs Martha Duban and Thomas Duban filed a Resistance (docket number 59) on February 25, 2013. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## I. PROCEDURAL HISTORY

On May 24, 2011, Plaintiffs Martha Duban and Thomas Duban filed a complaint seeking damages from Defendants Waverly Sales Co. ("Waverly Sales") and Dale

Chupp.[1] Martha Duban was seriously injured on March 25, 2010, while attending a horse auction at Waverly Sales. In Count I of her complaint, Martha alleges Waverly Sales was negligent, and seeks damages for her injuries. In Count II, Thomas seeks damages for loss of companionship.

On June 13, 2011, Waverly Sales filed a motion to dismiss, asserting statutory immunity under Iowa Code Chapter 673. The Dubans filed an amended complaint on June 20, and Waverly Sales' motion to dismiss was later denied as moot. Waverly Sales then filed an answer to the amended complaint.

On February 27, 2012, Waverly Sales filed a motion for summary judgment, renewing its argument that Iowa Code Chapter 673 exempts it from liability under the circumstances, and requires a dismissal of the Dubans' claims. On April 12, the Court denied the motion for summary judgment, finding two genuine issues of material fact in dispute: (1) whether Martha was a "spectator" or "participant" in the horse sale on March 25, 2010, as defined in Code Chapter 673; and (2) whether Martha was injured in "a place designated or intended by an animal activity sponsor as a place for persons who are not participants to be present," thereby bringing it within an exception to immunity, found in Iowa Code section 673.2(4).[2]

Following the Court's ruling on its motion for summary judgment, Waverly Sales filed a third-party claim against Merle Oxley. An amended third-party petition added Todd Oxley and Oxley's, Inc. as additional third-party defendants.[3] This matter is now scheduled for trial on March 25, 2013.

Waverly Sales and Oxley continue to argue that Iowa Code Chapter 673 immunizes them from liability under these circumstances. The revised proposed final pretrial order

---

[1] Dale Chupp was subsequently dismissed as a defendant.

[2] *See* Ruling on Motion for Summary Judgment (docket number 29) at 10.

[3] Todd Oxley was subsequently dismissed as a third-party defendant.

submitted by the parties advises the Court that "[t]he parties now agree that the facts on this issue are not in dispute and that the issue should be determined by the Court as a matter of law." At the final pretrial conference on February 22, 2013, the parties agreed that this issue could be addressed by the Court in a renewed motion for summary judgment filed by Waverly Sales, and joined in by Oxley. The instant motion was filed later that day.

## II. RELEVANT FACTS

In their revised proposed final pretrial order, the parties stipulated to the following facts for the purpose of submitting this issue to the Court prior to trial:

1. On 3-25-10, the Waverly Sales Company was a domesticated animal activity sponsor as defined in Iowa Code §673.1(4).

2. The Horse Sale, which plaintiffs attended on 3-25-10 was a domesticated animal event under Iowa Code §673.1(3).[4]

3. Third Party defendants Oxley were owners of horses and domesticated animal activity participants and were participating in a domesticated animal activity when driving their horses through the sale barn on 3-25-10 under Iowa Code §673.1(3) and (8).

4. Plaintiff Tom Duban attended the event with the intention of bidding on equipment and possibly a horse or horses and had a bidding number registered to him. He was a participant as defined by Iowa Code §673.1(8).

5. Plaintiff Martha Duban attended the event with her husband, Tom Duban. Martha did not do any bidding nor did she have a bid card. There will be no evidence that she assisted her husband in bidding or assisted him in considering purchases of anything at the auction.

6. Plaintiffs purchased tickets to sit in the north bleachers at the Waverly Sales barn on 3-25-10 during the sale. They chose to do so so that Tom Duban could get a better look at the horses being sold.

---

[4] Section 673.1(3), cited by the parties, defines a "domesticated animal *activity*." A "domesticated animal *event*" is defined in section 673.1(5).

3

7. The sales catalogue provided to attendees by the Sales Company said regarding seating: Seats will go on sale Wednesday, March 24, from 9 a.m. to 1 p.m. selling in the sale arena. There will be a charge of $5 for ringside and bleacher seats. This is done to enable buyers to be closer to the animals in the sale ring.

8. Attendees at the Sale may purchase seats as above to get reserved seating but do not have to purchase seating to attend the sale or to sit in seating that is not purchased by others.

9. During a sale, horses are led into the arena from the stalls to the north of the arena through the northwest alleyway. Horses wait in the northwest alleyway until it is their turn to go into the arena. Horses are shown on the arena floor. Horses are led out of the arena after they are sold through the northeast alleyway unless their tack is also sold in which case they are led through the east overhead door.

10. The restrooms in the Sale Barn are located southwest of the south side of the arena. In order to access them from the north bleachers, an attendee must cross either the northwest alleyway, the northeast alleyway, the arena floor, or some combination of those areas.

11. Attendees sitting in the south bleachers do not have to cross any area where horses are ordinarily led in order to reach the restrooms from their seats.

12. On 3-25-10, Martha Duban had been in her seat in the north bleachers during the sale. She had exited the north bleachers to use the restroom and was returning through the northeast alleyway when she was injured.

13. Martha Duban was stepped on by a draft horse or a team of draft horses after the team shied, apparently in reaction to the opening of the east overhead door at the direction of employees of the Waverly Sales Company. Unpredictable reactions to unfamiliar conditions, being kicked or trampled and the failure of a participant to exercise reasonable care, take adequate precautions, or use adequate control when engaging in the activity are all inherent risks of domesticated animal activities under Iowa Code §673.1(7).

### III. DISCUSSION

Iowa Code section 673.2 provides generally that a person sponsoring a "domesticated animal activity" is not liable for injuries suffered "by a participant or

spectator resulting from the inherent risks" of the activity.[5] As set forth above, the parties agree that the horse sale on March 25, 2010 was a "domesticated animal event" and Waverly Sales was a "domesticated animal activity sponsor." Accordingly, the general application of section 673.2 provides that Waverly Sales is not liable for Martha's injuries — whether she was a participant or a spectator — if the injuries resulted from the "inherent risks" of a domesticated animal activity.

The parties further stipulated that "[u]npredictable reactions to unfamiliar conditions, being kicked or trampled and the failure of a participant to exercise reasonable care, take adequate precautions, or use adequate control when engaging in the activity are all inherent risks of domesticated animal activities." *See also* Iowa Code section 673.1(7) (defining "inherent risks of a domesticated animal activity"). Because Martha was stepped on by a draft horse or a team of draft horses after the team shied, apparently in reaction to the opening of the east overhead door, her injuries resulted from the "inherent risks" of a domesticated animal activity. As a general proposition, the sponsor an "animal event" is not liable for injuries sustained to participants or spectators resulting from the inherent risks of "animal activity." That is, as a general proposition, Waverly Sales would not be liable for injuries sustained by Martha, or other participants or spectators, resulting from the inherent risks associated with a horse misbehaving.

There are five exceptions, however, to the general "immune from liability" rule found in section 673.2. In this case, the Dubans point to the exception found in section 673.2(4). The general rule exempting an activity sponsor from liability does not apply if the injury occurs in a place "designated or intended" by the activity sponsor as a place "for

---

[5] Iowa Code section 673.2 provides in pertinent part:
> A person, including a domesticated animal professional, domesticated animal activity sponsor, the owner of the domesticated animal, or a person exhibiting the domesticated animal, is not liable for the damages, injury, or death suffered by a participant or a spectator resulting from the inherent risks of a domesticated animal activity.

persons who are not participants to be present."[6] The parties agree the horse sale was a "domesticated animal event" and Waverly Sales was "an animal activity sponsor." Accordingly, the Court must determine whether the "domestic animal activity" occurred in a place "designated or intended" by Waverly Sales "as a place for persons who are not participants to be present."

In their trial briefs, Waverly Sales and Oxley assert that bringing the horses to the arena to be sold, and removing them afterwards, is part of a "domesticated animal activity."[7] The Court agrees. "Domesticated animal activity" is defined broadly in section 673.1(3). It includes "driving" a domesticated animal, participating in an activity sponsored by a domesticated animal activity sponsor, participating or assisting as a participant in a domesticated animal event, managing or assisting in managing a domesticated animal in a domesticated animal event, and showing or displaying a domesticated animal. Section 673.1(3)(a)(d)(e)(f) and (n). During the sale, horses were led into the arena through a northwest alleyway. After they were sold, they were led out of the arena through a northeast alleyway. That is, the injury occurred in a place where a domesticated animal activity was occurring.

The question then becomes whether the alleyway was a place designated or intended by Waverly Sales "for persons who are not participants to be present." Defendants argue Martha was a "participant." Martha argues she was not. Chapter 673 defines a "participant" as "a person who engages in a domestic animal activity, regardless of whether the person receives compensation." Section 673.1(8). Here, Tom Duban

---

[6] Iowa Code section 673.2(4) states:
    A domesticated animal activity which occurs in a place
    designated or intended by an animal activity sponsor as a place
    for persons who are not participants to be present.

[7] In his trial brief, Oxley asserts that the alleyway where the injury occurred "was precisely a place where 'domesticated animal activity' was **intended** to be conducted." Oxley's Trial Brief (docket number 52) at 9. (emphasis in original)

attended the event with the intention of bidding on equipment and possibly a horse or horses, and had a bidding number registered to him. The parties agree that he was a "participant" as defined in section 673.1(8). While Martha Duban attended the event with her husband, she did not do any bidding and did not have a bid card. There is no evidence that she assisted her husband in bidding or assisted him in considering purchases of anything at the auction.

In its trial brief, Waverly Sales asserts that "[t]he entire sale barn is a place where domesticated animal activities take place," and argues that "[i]f a person is attending a sale at the sale barn, they are engaged in the activity, they are a participant because they have placed themselves in a place, a sale barn, where animal activities take place."[8] The Court believes this argument misses the mark. As defined in section 673.1(8), a "participant" is one who "engages in a domestic animal activity," not merely one who attends a place "where domesticated animal activities take place." Waverly Sales' argument blurs the distinction between a "domesticated animal *event*" and a "domesticated animal *activity*." That is, not everyone who attends a domesticated animal event "engages" in a domesticated animal activity.

"Domesticated animal activity," as relevant here, includes driving a domesticated animal, participating in an activity sponsored by a domesticated animal activity sponsor, participating or assisting a participant in a domesticated animal event, managing or assisting in managing a domesticated animal in a domesticated animal event, or showing or displaying a domesticated animal. Section 673.1(3)(a)(d)(e)(f) and (n). Martha was not "engaged" in any of those things. Because Martha was not engaged in a domesticated animal activity, as defined in section 673.1(3), she was not a "participant," as defined in section 673.1(8). *Hynes v. Clay County Fair Ass'n*, 672 N.W.2d 764, 767 (Iowa 2003) (a person walking near the animal barns at a county fair was determined to be a

---

[8] Waverly Sales' Trial Brief (docket number 47) at 10.

"spectator," as defined in section 673.1(9), because while she was in the vicinity of a domesticated animal activity, she was not engaged in the activity).

The Court also rejects Waverly Sales' argument that because she purchased a seat at the horse sale, Martha became a participant in a domesticated animal activity. Tom Duban, who the parties agree *was* a participant at the auction, purchased a seat in the north bleachers so he could get a better look at the horses being sold. Martha also purchased a seat, presumably so she could sit with her husband. Nothing in the sales catalog restricted the sale of seats to persons who intended to participate in the auction, however, and there is no evidence that Martha, in fact, participated in any way.

Having determined that Martha was not a participant in a domesticated animal activity, the Court must determine whether Waverly Sales "designated or intended" the alleyways to be used by non-participants. The parties agree that to access the seats in the north bleachers, an attendee must cross through one of the alleyways, or the arena floor itself. To access the restrooms in the sale barn, persons sitting in the north bleachers must cross through the alleyways or the arena. Here, Martha was returning from the restroom to her seat in the north bleachers, when she was injured in the northeast alleyway. This was an area designated and intended by Waverly Sales for ingress and egress to the north bleachers.

If the accident had occurred in a place not designated or intended for non-participants, such as the stable area, then the general rule exempting Waverly Sales from liability would apply. In this case, however, Waverly Sales intended the alleyway to be used by persons to access their seats in the north bleachers. Accordingly, the alleyways were intended by Waverly Sales as a place where non-participants may be present. Since the "activity" — including the unfortunate accident — occurred in a place intended for persons who are not participants to be present, the exception found in section 673.2(4)

applies.[9] That is, Waverly Sales is not entitled to rely on the general "immune from liability" rule found in section 673.2.

## ORDER

IT IS THEREFORE ORDERED that the Renewed Motion for Summary Judgment (docket number 57) filed by Waverly Sales Co. is **DENIED**.

DATED this 25th day of February, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[9] In their briefs, the parties cite *Snider v. Fort Madison Rodeo Corp.*, 2002 WL 570890 (Iowa App.). There, the Court found that a parade was a domesticated animal event, and a spectator injured when struck by a pony while attempting to cross the street was injured as the result of inherent risks of a domesticated animal activity and, therefore, unable to recover for her injuries. The Court further concluded that three exceptions urged by the plaintiff were inapplicable. Because the plaintiff did not urge the exception found in section 673.2(4), however, the holding in *Snider* is of little assistance here.